# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**DANIEL HORACEK,**

        Petitioner,

                              CASE NO. 04-CV-74293-DT

v.                              HONORABLE DENISE PAGE HOOD

**HAROLD WHITE,**

        Respondent.

_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Daniel Horacek has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition attacks Petitioner's state conviction for breaking and entering an unoccupied dwelling. Having reviewed the pleadings and record, the Court concludes that Petitioner is not entitled to relief. Accordingly, the habeas petition must be denied.

**I. Background**

    **A. The Trial**

Petitioner was tried before an Oakland County circuit judge on November 8, 1999. James Lee testified that, on August 21, 1999, he was the district manager of the Clark gas station located on Baldwin Road in Orion Township. Early that morning, he was contacted by an alarm company and the Oakland County Sheriff's Department. He proceeded to the gas station on Baldwin Road where he met police officers who were waiting to see him. He noticed that the door to the shed behind the gas station had been pried open and that the dead bolt was bent. Telephone lines were hanging loose on the back of the building. He stated that he did not give

anyone permission to remove anything from the shed, and none of his employees had informed him that the shed was damaged.

Kimberly Youngblood testified that she, Petitioner, and a man named Theo were present at the Clark gas station in Lake Orion on August 21, 1999, at approximately 1:30 or 2:00 a.m. The trio arrived at the gas station in Petitioner's car, which Petitioner was driving. The gas station was closed, but Petitioner asked Theo to appear as though he were using the telephone. Then Petitioner got out of the car, walked past the front of the store, and turned right. At that point, he was out of Youngblood's sight. About five or ten minutes later, Petitioner came back around the same corner and walked to the front of the building. He tried to open the front door, which was locked, and then went to his car. He was wearing something white on his hands. Petitioner stated that he broke into the shed behind the gas station and that there was only Coca Cola back there. Theo responded that the Coca Cola would sell on the street. Petitioner then backed up the car, grabbed some Coca Cola, and threw it in the trunk of his car. Ms. Youngblood went into the shed and grabbed two boxes of motor oil. Before she was able to return to the car, Petitioner said, "The police are here, we're busted." She placed the motor oil on the ground and climbed into the back seat of Petitioner's car.

Ms. Youngblood identified a crow bar that looked similar to the one Petitioner had handled before they got to the gas station. She claimed to have a clear memory of what occurred that night, despite having smoked crack cocaine a couple of hours before the incident at the gas station.

Youngblood testified on cross-examination that she did not see Petitioner pry open the shed. She also stated that the police questioned the three of them at the scene and that she agreed

to waive her rights and to write a statement. She did not think that she was going to benefit from the statement, and she was not led to believe she would get a reduced bond if she cooperated with the police and gave a statement against Petitioner. According to her, "They never promised me anything." She admitted that she eventually pleaded guilty in the case.

Deputy Oakland County Sheriff Stacey Nolta testified that she was dispatched to the Clark Station on Baldwin Road about 1:45 a.m. on August 21. Upon her arrival at the gas station, she observed a vehicle backed up to the storage shed with the hatch back open. A man and a woman were standing on the driver's side of the vehicle and another man was seated in the passenger seat of the vehicle. The storage shed had been pried open, and a search of the vehicle revealed ten cases of Coca Cola in the hatch back. The three subjects were handcuffed, searched, and placed in patrol cars. Petitioner was not wearing any socks at the time, but there were two white socks on the driver's side of the front seat of the car.

Officer Nolta identified an exhibit as the lug wrench which another officer found under the driver's seat of the car. She identified Petitioner as the white male she had seen standing by the driver's door of the car. She said that he was attempting to get in the car when the officers arrived and that the female suspect's name was Kim Youngblood.

Sergeant Susan Steinhelper was also dispatched to the gas station. She observed a green vehicle backed up toward the shed with a man and woman standing behind the vehicle at the hatchback. She identified Petitioner as the man she had seen standing by the hatchback, and she stated that Kimberly Youngblood was the woman who had been standing there. The woman got into the back seat of the car and the man got into the front seat. A third individual was seated in the front passenger seat of the car.

3

Petitioner testified that he picked up Ms. Youngblood and Theo Willis at Willis' place between 4:00 p.m. and 5:00 p.m. on August 20, 1999. He took them to his apartment. About 1:00 a.m. or 1:30 a.m. they left the apartment to take Ms. Youngblood home. Because Petitioner was tired and on parole and because Willis was too drunk to drive, Ms. Youngblood drove his car. He fell asleep in the back seat. When he awoke, he noticed that they were parked at a gas station and that the hatchback of the car was open. Willis explained to him that Ms. Youngblood worked there and that she was picking up something. As Petitioner got out of the car, Ms. Youngblood approached him from the rear of the gas station. He turned and saw a police car pull up. Ms. Youngblood was carrying some cases of "pop," which she put down before getting in the back seat of the car.

Petitioner denied exiting his vehicle with a lug nut wrench or prying open the shed behind the Clark station. He also denied wearing white gloves or socks on his hands that night, and he stated that there were no socks on the front seat of his car. He claimed that he did not have any discussions with Kimberly Youngblood and Theo Willis about breaking into a business, and he denied carrying any items from the shed into the vehicle. On cross-examination, Petitioner also denied standing near the hatchback of his car on the night in question. He did admit to having a criminal history, which included seven or eight prior convictions for breaking and entering or attempted breaking and entering.

At the conclusion of the bench trial, the trial court found Petitioner guilty, as charged, of breaking and entering an unoccupied dwelling with intent to commit a larceny. *See* Mich. Comp. Laws § 750.110. On January 7, 2000, the trial court sentenced Petitioner as a habitual offender to imprisonment for a minimum term of three years, ten months, and a maximum term

of twenty years.

### B. The Appeals

Petitioner applied to the Michigan Court of Appeals for peremptory re-sentencing. He argued that the trial court had failed to comply with certain state law requirements before permitting him to represent himself at the sentencing. The state court of appeals agreed and granted Petitioner's motion. The court of appeals reversed Petitioner's sentence and remanded his case for re-sentencing. *See People v. Horacek*, No. 224743 (Mich. Ct. App. Sept. 19, 2000).

On remand, Petitioner was re-sentenced to the same sentence of three years, ten months, to twenty years. Petitioner appealed his new sentence, but later agreed to dismiss the appeal. The Michigan Court of Appeals dismissed the appeal pursuant to the parties' stipulation. *See People v. Horacek*, No. 232332 (Mich. Ct. App. May 17, 2001).

Petitioner raised his habeas claims in a motion for relief from judgment on December 10, 2001. The trial court denied his motion, and the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Horacek*, No. 245470 (Mich. Ct. App. Apr. 4, 2003). On October 31, 2003, the Michigan Supreme Court denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Horacek*, No. 123956 (Mich. Sup. Ct. Oct. 31, 2003).

### C. The Federal Court Proceedings

Petitioner signed his federal habeas corpus petition on October 28, 2004. The grounds for relief allege ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and denial of the right to appeal. Respondent moved to dismiss the habeas petition on the ground that Petitioner had failed to comply with the statute of limitations. The Court denied

Respondent's motion and ordered him to file an answer to the habeas petition. Since then, Respondent has filed an answer to Petitioner's claims, and Petitioner has filed a reply brief.

## II. Procedural Default

Respondent argues that Petitioner's claims are procedurally defaulted because Petitioner failed to raise his habeas claims on direct review, and the state courts relied on Michigan Court Rule 6.508(D) to deny relief. Rule 6.508(D) requires state courts to deny relief from judgment if the motion alleges grounds that could have been raised on appeal unless the movant shows "good cause for failure to raise such grounds on appeal," and "actual prejudice from the alleged irregularities" or "a significant possibility that the defendant is innocent of the crime." Although the trial court and the Michigan Supreme Court cited Rule 6.508(D) when addressing Petitioner's claims, the Michigan Court of Appeals denied leave to appeal for lack of merit.

Even if Petitioner's claims are procedurally defaulted, procedural default is not a jurisdictional bar to review of a claim. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The Court finds it more efficient to address the merits of Petitioner's claims than to analyze whether Petitioner has procedurally defaulted the claims. Consequently, the Court will excuse the alleged procedural default and proceed to address Petitioner's claims using the following standard of review.

## III. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

## IV. Discussion

### A. Trial Counsel

The first habeas claim alleges ineffective assistance of trial counsel. The Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984), "qualifies as 'clearly

7

established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391. Pursuant to *Strickland*, Petitioner must demonstrate that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. Counsel's performance is deficient if it "fell below an objective standard of reasonableness." *Id.* at 688. A deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### 1. Failure to Investigate and Move for an Adjournment

Petitioner contends that his trial attorney failed to produce Theo Willis as a defense witness and failed to ask for a continuance in order to find Willis. According to Petitioner, Willis would have testified that Petitioner was asleep in the back seat of the car while Kimberly Youngblood drove to the gas station, broke into the shed, and stole cases of "pop."

Willis has stated in an affidavit that he was willing and available to testify in November of 1999. Willis also states in his affidavit that Petitioner was asleep in the back seat of the car while Kimberly Youngblood drove to the gas station and placed "pop" in the rear of the vehicle. Willis claims that Petitioner exited the car immediately before the police arrived and that he did not wear white gloves or socks on his hands during the events at the gas station.

"[D]efense attorneys have a constitutional duty to conduct adequate factual investigations." *Joseph v. Coyle*, 469 F.3d 441, 460 (6th Cir. 2006) (citing *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Wiggins v. Smith*, 539 U.S. 510 (2003)). *Strickland* requires defense counsel "to make reasonable investigations or to make a reasonable decision that makes

8

particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

Petitioner's attorney apparently tried to call Willis on the first day of trial when she acquired Willis' telephone number from the prosecution, but she received no answer. Even if defense counsel failed to request information about Willis in a timely manner or was remiss in failing to seek a continuance, the allegedly deficient performance did not prejudice the defense. Willis' testimony would have contradicted Kimberly Youngblood's testimony, which the trial court found to be credible. Although Willis' testimony would have supported the defense theory, Petitioner's testimony was suspect because he denied standing by the hatchback of the car and he denied the presence of white socks on the front seat of his car. This testimony was contradicted by the police officers who arrived on the scene. It is unlikely that the trial court would have found Willis to be more credible than Youngblood and the police officers. In fact, the trial court stated in its order on Petitioner's motion for relief from judgment that:

> Mr. Willis was on probation at the time of the offense and therefore, his testimony in concert with Defendant's version of events is suspect. Further, Mr. Willis' affidavit contradicts Defendant's own trial testimony as to the time he arrived home. His testimony is also contradicted by Sergeant Steinhelper who testified that she saw both the Defendant and Ms. Youngbood behind the hatchback. Additionally, his testimony does not explain the lug wrench that was found or the white socks.

Habeas Pet., App. 10a. The trial court concluded that Mr. Willis' testimony would not have changed the outcome of the trial.

There is not a reasonable probability that, but for defense counsel's failure to call Theo Willis as a witness, the result of the trial would have been different. Thus, defense counsel's performance did not prejudice the defense. Petitioner has failed to satisfy both prongs of the *Strickland* test.

### 2. Advice on Waiving a Jury Trial

Petitioner alleges that his trial attorney should not have advised him to waive a jury trial, because the judge assigned to his case had accepted Kimberly Youngblood's guilty plea. "One touchstone of a fair trial is an impartial trier of fact . . ." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 554 (1984)). However, opinions formed by a judge on the basis of facts introduced in prior proceedings are not indicative of bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Liteky v. United States*, 510 U.S. 540, 555 (1994). The test is whether "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964). The mere fact that a judge has presided over proceedings in a co-defendant's case does not constitute reasonable grounds for questioning the judge's impartiality in a subsequent trial involving the remaining co-defendant. *United States v. Cowden*, 545 F.2d 257, 266 (1st Cir. 1976); *accord United States v. Monaco,* 852 F.2d 1143, 1147 (9th Cir. 1988) (stating that "knowledge obtained from judicial proceedings involving a co-defendant does not require recusal"); *People v. Rider*, 93 Mich. App. 383, 388; 286 N.W.2d 881, 882-83 (1979) (finding no prejudice or bias in a case where the trial court conducted a bench trial after accepting the guilty plea of a co-defendant).

There is no evidence in the record that the trial court felt a deep-seated favoritism toward Kimberly Youngblood and a deep-seated antagonistic toward Petitioner, such that fair judgment was impossible. The trial court noted in its order on Petitioner's post-conviction motion that it did not make a credibility determination when taking Ms. Youngblood's plea and that it was merely required to determine whether Youngblood's statements satisfied the requirements for taking a plea. Because Petitioner has failed to show that the trial court was biased, defense counsel was not ineffective for advising Petitioner to waive his right to a jury trial.

### 3. Failure to Discover and Elicit Promise made to Youngblood

Petitioner alleges next that his attorney should have discovered and elicited information that Kimberly Youngblood was promised probation in return for her testimony at Petitioner's trial. An exhibit to the habeas petition indicates that the judge who presided over Petitioner's trial provided a preliminary evaluation in Youngblood's case on or about September 27, 1999. The judge agreed at that time to sentence Youngblood to probation. The trial court presumably knew at the time of Petitioner's trial in November of 1999 that Youngblood was promised a probationary sentence. Therefore, defense counsel's failure to elicit the information at Petitioner's trial did not prejudice the defense.

### 4. Use of Petitioner's Prior Convictions

Petitioner's final claim about his trial attorney is that the attorney failed to attempt to limit the use that could be made of Petitioner's prior convictions. Petitioner asserts that his numerous breaking and entering convictions were inadmissible as impeachment evidence.

Judges are presumed to ignore inadmissible evidence when making decisions in bench trials. *Harris v. Rivera*, 454 U.S. 339, 346 (1981). Therefore, even assuming that Petitioner's

11

prior convictions were inadmissible at trial, defense counsel's failure to attempt to limit the use of those convictions did not constitute deficient performance.

**B. The Prosecutor**

Petitioner alleges that the prosecutor violated Mich. Comp. Laws § 767.40a(5) and also failed to disclose evidence favorable to the defense. The alleged violation of state law is not a basis for granting habeas relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). The only question is whether the prosecution suppressed material evidence favorable to Petitioner. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). A true *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 685 (1985)).

Petitioner alleges that the prosecutor failed to provide his attorney with Theo Willis' address and telephone number and failed to disclose that Kimberly Youngbood was promised probation for her testimony at Petitioner's trial. Willis' address and telephone number were not exculpatory or impeaching evidence. And even though the information might have led to evidence favorable to the defense, Petitioner testified at his trial on November 8, 1999, that he had known Willis since the previous April and that he went to Willis' place and picked him up

12

on August 21, 1999. (Tr. Nov. 8, 1999, at 49.) Willis subsequently informed one of Petitioner's former attorneys that, at the time of Petitioner's trial, he was living at the same address where he lived on August 21, 1999, the day of the incident at the gas station. *See* Habeas Pet., App. 4a. The Court concludes that Petitioner knew or should have known Willis' address at the time of his trial.

Petitioner also knew or shown have know that Youngblood was promised probation. Petitioner admits that the information was available to the defense before his trial. (Pet. at 15.)

"*Brady* does not apply to information that is not wholly within the control of the prosecution." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *see also Spirko v. Mitchell*, 368 F.3d 603, 611 (6th Cir. 2004) (holding that *Brady* did not apply because the evidence in dispute was available to the habeas petitioner from sources other than the state, and he was aware of the essential facts necessary for him to obtain that evidence), *cert. denied*, 544 U.S. 948 (2005).

The undisclosed information in this case was not wholly within the control of the prosecution and should have been available to Petitioner. Consequently, Petitioner has failed to allege a true Brady claim.

**C. Appellate Counsel**

Petitioner alleges that his appellate attorneys were constitutionally ineffective.

**1. The First Appellate Attorney**

Petitioner raised one claim on direct appeal of his conviction: whether the trial court followed certain state law requirements before allowing Petitioner to waive his right to counsel at sentencing. Petitioner asserts that his appellate attorney should have raised additional arguments, including his pending claims, on direct appeal.

An appellate attorney need not raise every nonfrivolous argument on appeal if counsel decides as a matter of professional judgment not to raise those arguments. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Furthermore,

> it is difficult to demonstrate that an appellate attorney has violated the performance prong [of the *Strickland* test] where the attorney presents one argument on appeal rather than another. *Smith v. Robbins*, 528 U.S. 285, 289 (2000). In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.' *Id*. at 289.

*Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Exhibits to the habeas petition indicate that appellate counsel's decision regarding which issues to raise on direct appeal was a matter of professional judgment. *See* Habeas Pet., App. 16. Moreover, the attorney successfully argued that Petitioner was deprived of counsel at his sentencing. The court of appeals peremptorily vacated Petitioner's sentence and remanded his case for re-sentencing.

Petitioner has not shown that the pending issues are clearly stronger than the issue appellate counsel successfully argued on direct appeal, and there is not a reasonable probability that inclusion of the pending issues would have changed the result of the appeal. *Howard*, 405 F.3d at 485 (citing *Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001)). Therefore, Petitioner's first appellate attorney was not ineffective for failing to raise Petitioner's present claims on appeal.

### 2. The Second Appellate Attorney

Petitioner alleges that the appellate attorney who represented him following re-sentencing

improperly advised him to dismiss his appeal from the re-sentencing and to file a post-conviction motion under Subchapter 6.500 of the Michigan Court Rules. Petitioner apparently wanted to raise additional challenges to his conviction following his re-sentencing. However, the only issue he could have raised on appeal from the re-sentencing was the re-sentence. Therefore, appellate counsel was not ineffective for suggesting that Petitioner dismiss his appeal and challenge his conviction in a post-conviction motion.

### D.  Right to An Appeal

Petitioner alleges that he was denied his right to an appeal when a clerk for the Michigan Court of Appeals refused to file his *pro se* supplemental brief. "There is . . . no constitutional right to an appeal . . ." *Jones v. Barnes*, 463 U.S. at 751; *accord Halbert v. Michigan*, 545 U.S. 605, 610 (2005); *Ross v. Moffit*, 417 U.S. 600, 606 (1974). However, if a state does provide an appellate process for review of a conviction, the state must satisfy the requirement of due process, which "emphasizes fairness between the State and the individual dealing with the State . . . ." *Ross v. Moffit*, 417 U.S. at 609.

Petitioner's *pro se* brief was rejected by the Michigan Court of Appeals on February 20, 2001, because he submitted the brief before an attorney could file a brief in his behalf. *See* Habeas Pet., App. 18. Petitioner admits that counsel had not yet been appointed for him. *See* Petitioner's Reply, at 7. Even if the state court clerk erred in rejecting Petitioner's premature brief, Petitioner was provided a direct appeal from his conviction, a direct appeal from his re-sentence, and a collateral appeal following the denial of his motion for relief from judgment. He ultimately was able to present his pending claims to the state courts and was not deprived of an appeal.

15

## V. Conclusion

The decision of the Michigan Court of Appeals that Petitioner's claims lacked merit was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the application for a writ of habeas corpus [Dkt. 3] is DENIED.

        s/ DENISE PAGE HOOD
        DENISE PAGE HOOD
        UNITED STATES DISTRICT JUDGE

Date: November 5, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record and Daniel Horacek, Reg. No. 218347, Florence Crane Correctional Facility, 38 Fourth Street, Coldwater, MI 49036 on November 5, 2007, by electronic and/or ordinary mail.

        S/William F. Lewis
        Case Manager